## Bowman v. Jones-Hughes Coal Company.

(Decided April 10, 1912.)

### Appeal from Knox Circuit Court.

Contracts—Counter-claim.—Where a coal dealer agreed to buy a certain amount of coal from a coal miner, paid the purchase price therefor, and subsequently refused to accept the coal and sued the miner to recover the purchase price so paid to him, the miner was properly allowed to set-off against the purchase price the profit which he might reasonably have made upon the coal sold to the dealer, the measure of damages being the difference, if any, between the actual cost of the mining of the coal, and the contract price at which it was sold.

DISHMAN, TINSLEY & DISHMAN, F. D. SAMPSON and S. B. DISHMAN for appellant.

JAMES N. GILBERT for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant Bowman was a merchant living at Pineville, Ky. He also operated a coal yard at Knoxville, Tennessee. The appellee was a coal mining company, about to begin mining operations under a lease it had procured at Brier Hill, near Ely's in Knox county, Ky. On May 30, 1908, Bowman and the Coal Company made a written contract, whereby Bowman sold to the Coal Company a small stock of general merchandise supposed to be worth $1,000.00, but which invoiced $959.14. In payment therefor Bowman agreed to accept

"Blue Gem" lump coal, "mined or to be mined," from the Brier Hill mine, at $2.00 per ton. The delivery of the coal was provided for by the following clause of the contract:

"The foregoing coal is to be delivered to first party, or in other words, furnished to first party by second party on demand of first party, or at the rate of whatever capacity that second party may have in operation of same, until the $1,000.00 has been paid to the party of the first part by the party of the second part at the rate of $2.00 per ton as hereinabove mentioned."

On June 28, 1908, appellee shipped Bowman one car load of coal, which was sent to Knoxville, and remained unclaimed for about two weeks, Bowman being absent from Knoxville at the time. Appellee contends, and its officers have testified, that it insisted repeatedly upon Bowman taking the remainder of the coal called for by the contract, while Bowman insists that he had the right to order it to suit his convenience, and that the car load of coal shipped in June was shipped without any request or demand upon his part.

The appellee operated its mine for about one month, and had taken out about three car loads of lump coal and four or five car loads of "slack" coal, when it suspended operations. On February 26, 1909, Bowman instituted this action against appellee to recover $922.69, the value of the stock of goods, after crediting appellee with $36.00 for the car load of coal delivered in June, 1908. He alleged that he had therefore demanded that appellee comply with its contract, by delivering said coal, and that appellee had failed to carry out its contract. This suit is, therefore, to recover the value of the merchandise which was the consideration for the purchase of coal which appellee failed to deliver. The appellee answered, denying that appellant had requested the delivery of the coal; and, as a counter-claim, it alleged that it was ready, able and willing at any time up to February 1, 1909, to furnish the appellant the coal called for by the contract, but that appellant had failed and refused to accept it, except the one car load shipped in June, and that by reason of appellant's failure in this respect, appellee had been unable to continue the operation of its mines; that it had attempted to sell to others the coal it had sold to appellant, but without any success; that it was forced to keep and feed its stock, and keep its hands under contract, which finally led to its

suspension of business. Appellee puts its loss at $2,000.00, which consists of two separate and distinct items. It first alleged that in order for appellee to successfully operate its mine it had entered into an arrangement with third parties for the sale of quite a lot of nut and "slack" coal; that by reason of the contract made with Bowman, which it had made in order to dispose of the nut and "slack" coal, it would have been able to run and operate its mine regularly and profitably, but that Bowman, having failed and refused to accept the coal he bought, appellee was prevented from carrying out its contracts with other people, to furnish them with nut and "slack" coal, since it could only run its mine by selling different grades; that it was, after running for a time, forced to, and did stop operations, and shut down its mine. The second item of damage is $479.00, which appellee alleges was the clear profit it would have made on the coal sold to Bowman if he had carried out his contract.

Upon a trial the jury returned a verdict for the appellant for $542.82; and he, being dissatisfied with the amount of his recovery, prosecutes this appeal.

Appellee introduced evidence tending to show that it was able and willing to deliver this coal to appellant at any time prior to February 1, 1909, and that appellant not only refused to accept it, but did not demand delivery of the coal until a few days before he brought this suit, and after he knew that appellee had ceased to do a mining business. The differences between the parties, and the difficulty in reaching a correct determination of their respective rights, arises from that clause of the contract which provides for the delivery of the coal. It will be noticed that the contract calls for the delivery of coal "mined or to be mined," and that it was to be delivered on the demand "of first party or at the rate of whatever capacity that second party may have in operation of same (the mine) until the $1,000.00 has been paid."

Appellant insists that he had the right to demand the coal at any time he chose to do so, while appellee insists that it was the intention of the parties for the coal to be delivered regularly and as it was mined, but not at a rate in excess of the capacity of the appellee in the operation of the mine. We think a fair interpretation of the contract is, that the coal was to be delivered and accepted upon appellant's demand, within a reasonable time, but

was not to be demanded at a rate in excess of appellee's ability to mine it.

Bowman operated a coal yard, and the appellee operated a coal mine, with limited facilities, which were known to Bowman. In describing the coal as coal "mined or to be mined," the parties evidently understood that the coal was to be delivered when mined, and as it was mined.

Appellant insists that there is no principle of law that will sustain this recovery; that a man can not decline to carry out his contract, and recover damages from the opposite party for his own failure. This argument, however, assumes the question in issue. If we have properly construed the contract, then clearly appellee had the right to recover any damage that accrued to it by the failure of Bowman to accept the coal within a reasonable time, and this loss, if any, was properly set-off against the purchase price of the coal, which in this case was the merchandise, or its agreed value. The court excluded all proof of loss that appellee claimed by reason of its expected dealings with other persons, and confined appellee's recovery to its loss upon the coal sold to Bowman; and gave, as a measure of damages, the difference, if any, between the actual cost of mining and loading the coal on the cars ready for shipment, and the contract price with Bowman. Furthermore, as a condition to any recovery, the jury was required to find from the evidence that appellee had offered to deliver the coal either on the demand of Bowman, or at the rate of its capacity to produce said coal, and that Bowman had refused to accept it within a reasonable time after the execution of the contract. In this respect the instruction substantially followed the contract as above interpreted, and required the appellee to deliver the coal either upon the demand of the appellant, or in case he failed to demand it, within a reasonable time, and in no event at the rate to exceed its capacity of production; and, as appellant did not make the demand within a reasonable time, appellee's right to deliver it and require it to be accepted under the other measure of the contract, came into operation and was binding upon the appellant. The issues were properly submitted to the jury, and there was uncontradicted testimony by two witnesses on behalf of appellee tending to show that appellee had not only unsuccessfully tried to sell this lump coal to others, but that it would have made a profit of from seventy-five

cents to a dollar per ton, or a total profit of between $400 and $500 on the coal which Bowman refused to accept. If these facts were true, appellee was damaged to that extent by Bowman's failure to carry out his contract, and this damage was a proper counterclaim to Bowman's claim against appellee. Code of Practice, section 96, subsection 2. In fixing appellee's damage at $479.87 upon its counterclaim, we can not say that the jury abused its province as a trier of the facts.

Judgment affirmed.